Case No. NV-26-1234
Case No. NV-26-1235

*Motion to Consolidate Pending*

---

**United States Bankruptcy Appellate Panel**
**For the Ninth Circuit**

---

*434 N. Orange Investment, LLC v. Velocity Esports, Inc, et al.*
*(In re Velocity Esports, Inc.)*

Bankruptcy Case No. 25-12627-mkn
Adversary Proceeding Case No. 26-01075-mkn

---

On Appeal from the United States Bankruptcy Court
for the District of Nevada

---

# Opening Brief of Appellant 434 N. Orange Investment, LLC


Maurice B. VerStandig, Esq.
Nevada Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., #665
Henderson, Nevada 89012
Phone: (301) 444-4600
mac@mbvesq.com
*Counsel for the Appellant*

## **Rule 8012 Statement**

434 N. Orange Investment, LLC is wholly owned by 434 N. Orange Investment Mezzanine, LLC.

## Table of Contents

I. Rule 8012 Statement ........ ii

II. Table of Contents ........ iii

III. Table of Authorities ........ iv

IV. Statement of Jurisdictional ........ 1

V. Statement of Issues Presented ........ 2

VI. Statement of the Case ........ 5

VII. Summary of Argument ........ 9

VIII. Argument ........ 11

A. A Debtor's Pecuniary Need is Insufficient, Without More, to Warrant Entry of a Section 105 Injunction ........ 11

B. It is Improper to Use a Section 105 Injunction to Effectuate a Fraudulent Conveyance ........ 19

C. The Bankruptcy Court Erred in Awarding Relief Broader than that Sought in an Unopposed Motion ........ 21

IX. Certificate of Compliance ........ 26

## Table of Authorities

**Cases**

*Bank of N.Y. Mellon v. Chul Hyun Gong (In re Chul Hyun Gong)*,
2017 Bankr. LEXIS 2228 (Bankr. C.D. Cal. Aug. 9, 2017) .................................. 12

*Cabardo v. Patacsil (In re Patacsil)*,
189 F.4th 907 (9th Cir. 2026) ........................................................................ 1

*Celotex Corp. v. Edwards*,
514 U.S. 300 (1995) ...................................................................................... 1

*Charlie Y., Inc. v. Carey (In re Carey)*,
446 B.R. 384 (9th Cir. BAP 2011) .................................................................. 5

*Clevinger v. Advoc. Holdings, Inc.*,
134 F.4th 1230 (D.C. Cir. 2025) .................................................................... 17

*Contour Design, Inc. v. Chance Mold Steel Co.*,
2010 U.S. Dist. LEXIS 121761 (D.N.H. Oct. 22, 2010) ...................................... 23

*Diamond v. City of Taft*,
215 F.3d 1052 (9th Cir. 2000) ........................................................................ 4

*Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),*
280 F.3d 648 (6th Cir. 2002) ........................................................................ 12

*Giaimo v. MacKinnon*,
2000 WL 1745171 (D.N.H. Oct. 20, 2000) ........................................................ 24

*Greenlaw v. United States*,
554 U.S. 237 (2008) ...................................................................................... 24

*Groner v. Miller (In re Miller)*,
262 B.R. 499 (B.A.P. 9th Cir. 2001) ................................................................ 4

*Harrington v. Purdue Pharma L.P.*,
603 U.S. 204 (2024) ............................................................................... 13, 18

*Homestead Holdings, Inc. v. Broome & Wellington (In re PTI Holding Corp.)*,
346 B.R. 820 (Bankr. D. Nev. 2006) ..........14

*In re Am. Hardwoods*,
885 F.2d 621 (9th Cir. 1989) ..........15

*In re Asset Resolution Corp.*,
552 B.R. 856 (Bankr. D. Kan. 2016) ..........13

*In re Fed. Shopping Way, Inc.*,
717 F.2d 1264 (9th Cir. 1983) ..........16

*In re G.S.F. Corp.*,
938 F.2d 1467 (1st Cir. 1991) ..........13

*In re Gilman*,
176 F.4th 1152 (9th Cir. 2026) ..........1

*In re Kasual Kreation, Inc.,*
54 B.R. 915 (Bankr. S.D. Fla. 1985) ..........15

*In re M.J.H. Leasing, Inc.*,
328 B.R. 363 (Bankr. D. Mass. 2005) ..........15

*In re Mariner Health Cent., Inc.*,
2023 Bankr. LEXIS 95 (Bankr. N.D. Cal. Jan. 12, 2023) ..........14

*In re Nat'l Staffing Servs., LLC*,
338 B.R. 35 (Bankr. N.D. Ohio 2005) ..........12

*In re Northlake Bldg. Partners*,
41 B.R. 231 (Bankr. N.D. Ill. 1984) ..........15

*In re Powell*,
2025 Bankr. LEXIS 1755 (Bankr. S.D.N.Y. July 23, 2025) ..........13

*In re Third Eighty-Ninth Assoc.*,
138 B.R. 144 (S.D.N.Y. 1992) ..........12

*In re TRS, Inc.*,
76 B.R. 805 (Bankr. D. Kan. 1987) ........................................................................15

*In re Wanger*,
Case No. 26-18405 (Bankr. N.D. Ill. 2026)...............................................................19

*Kiviti v. Bhatt*,
80 F.4th 520 (4th Cir. 2023) ....................................................................................22

*L.A. Mem'l Coliseum Com. v. Nat'l Football League*,
634 F.2d 1197 (9th Cir. 1980) ..................................................................................15

*Lazarus Burman Assoc. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assoc.)*,
161 B.R. 891 (Bankr. E.D.N.Y. 1993).......................................................................15

*Lomas Fin. Corp. v. Northern Trust Co. (In re Lomas Fin. Corp.)*,
117 B.R. 64 (S.D.N.Y. 1990)....................................................................................15

*McComish v. Bennett*,
611 F.3d 510 (9th Cir. 2010) ......................................................................................5

*Mellem v. Mellem*,
625 B.R. 172 (B.A.P. 9th Cir. 2021) ..........................................................................4

*Munaf v. Geren*,
553 U.S. 674 (2008)..................................................................................................12

*Nken v. Holder*,
556 U.S. 418 (2009)........................................................................................... 22, 23

*Noble Prestige Ltd. v. Galle*,
83 F.4th 1366 (11th Cir. 2023) ..................................................................................24

*Ocwen Loan Servicing LLC v. Marino (In re Marino)*,
949 F.3d 483 (9th Cir. 2020) ....................................................................................14

*Picard v. Fairfield Greenwich Ltd.*,
762 F.3d 199 (2d Cir. 2014)......................................................................................12

*Purdue Pharma, L.P. v. City of Grande Prairie (In re Pharma L.P.)*,
69 F.4th 45 (2d Cir. 2023) .......... 13

*Rockette v. Carpenter Mgmt.*,
2025 U.S. Dist. LEXIS 224420 (N.D. Miss. Nov. 14, 2025) .......... 24

*Solidus Networks, Inc. v. Excel Innovs., Inc. (In re Excel Innovs., Inc.)*,
502 F.3d 1086 (9th Cir. 2007) .......... 2, 14, 15, 16

*Temple v. Reliance First Capital, LLC*,
2025 U.S. Dist. LEXIS 106014 (N.D. Ala. June 4, 2025) .......... 24

*United Bank v. Buckingham*,
301 F. Supp. 3d 547 (D. Md. 2018) .......... 20

*Weinberger* v. *Romero-Barcelo*,
456 U.S. 305 (1982) .......... 23

*Wharton v. Schwartzer (In re Wharton)*,
563 B.R. 289 (B.A.P. 9th Cir. 2017) .......... 5

*Winter v. NRDC, Inc.*,
555 U.S. 7 (2008) .......... 12, 17, 18

**Statutes**

11 U.S.C. § 105 .......... *passim*

11 U.S.C. § 548 .......... 20

28 U.S.C. § 151 .......... 2

28 U.S.C. § 157 .......... 1

28 U.S.C. § 158 .......... 1

28 U.S.C. § 1292 .......... 2

28 U.S.C. § 1334 ........................................................................................1

740 Illinois Compiled Statutes § 160/6.................................................................20

Florida Statutes § 726.106 ........................................................................................20

Nevada Revised Statutes § 112.190.........................................................................20

**Rules**

Federal Rule of Bankruptcy Procedure 7065...........................................................23

Federal Rule of Bankruptcy Procedure 8002.............................................................2

Federal Rule of Bankruptcy Procedure 8015...........................................................26

Federal Rule of Civil Procedure 65 ..........................................................................23

**Treatises**

2 R. Levin & H. Sommer, Collier on Bankruptcy ¶105.01, (16th ed. 2023) ..........13

Black's Law Dictionary 784 (6th ed. 1990) ............................................................23

## I. Statement of Jurisdiction

The United States Bankruptcy Court for the District of Nevada (the "Bankruptcy Court") enjoys subject matter jurisdiction over the instant case pursuant to the allowances of sections 157 and 1334 of title 28 of the United States Code.

Specifically, this appeal concerns the Bankruptcy Court's granting of a section 105 injunction and related relief. Appendix at 206-213. Insofar as this statutory foundation falls within title 11 of the United States Code (the "Bankruptcy Code"), such a cause of action invites "arising under" jurisdiction. 28 U.S.C. § 1334(b). The granting of injunctive relief in this case is also amongst the various "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A).

This Honorable Court enjoys jurisdiction over this appeal pursuant to the allowances of section 158 of title 28 of the United States Code. Specifically, the two orders on appeal are (i) a section 105 injunction, which is appealable "to the district court for the judicial district in which the bankruptcy judge is serving," *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (quoting 28 U.S.C. § 158(a)); and (ii) a final order denying reconsideration of an order directing the forfeiture of a creditor's lien on the monies of a third party, *see Cabardo v. Patacsil (In re Patacsil)*, 189 F.4th 907, 916 (9th Cir. 2026) ("A 'final' order under § 158 need only 'terminate a discrete proceeding in bankruptcy, rather than the entire bankruptcy case,' to be appealable.") (quoting *In re Gilman*, 176 F.4th 1152, 1161 (9th Cir. 2026)).

Moreover, the Ninth Circuit has historically regarded—as final, appealable orders—those preliminary injunctions entered without a record evidencing an intent to conduct further proceedings. *See Solidus Networks, Inc. v. Excel Innovs., Inc. (In re Excel Innovs., Inc.)*, 502 F.3d 1086, 1092 (9th Cir. 2007) ("We hold that the injunction granted by the bankruptcy court constitutes an appealable final decision. The injunction is in effect an extension of the automatic stay, halting another proceeding to avoid disruption of the debtor's reorganization.").[1]

The orders from which this appeal is taken were entered on October 2, 2026. Appendix at 202, 206. A notice of appeal was filed the day preceding (following an oral ruling but prior to entry of the written orders), on October 1, 2026. Appendix at 199. This appeal is accordingly timely in nature. *See* Fed. R. Bankr. P. 8002(a)(1-2).

## II. Statement of Issues Presented

This case challenges the permissibility of a section 105 injunction where (i) the need addressed by injunctive relief is purely monetary in nature; (ii) the Debtor does not make a showing of a likelihood of success in reorganizing; and (iii) the sole

---

[1] To the extent this Honorable Court does not believe either of the orders appealed from to be within the grasp of section 158(a), it is asked this brief be construed, alternatively, as a motion for leave to appeal, under section 158(a)(3). Such relief ought to be granted, if needed, insofar as the Bankruptcy court is "a unit of the district court," 28 U.S.C. § 151, and injunctive orders of district courts are immediately appealable in nature, 28 U.S.C. § 1292(a)(1).

irreparable harm underlying the injunction is the administrative insolvency of a chapter 11 estate.

434 N. Orange Investment, LLC ("434 N. Orange" or the "Appellant") entered into a lease with Velocity Esports Orlando Downtown, LLC ("Velocity" or the "Debtor"), partially guaranteed by Philip Kaplan ("Mr. Kaplan") and Leonard Wanger ("Mr. Wanger"). When Velocity defaulted on the lease and sought bankruptcy relief, 434 N. Orange secured a judgment against the guarantors. Thereafter, 434 N. Orange located approximately $400,000.00 in concealed monies, being held for the benefit of Mr. Wanger, in a self-settled, revocable trust. 434 N. Orange proceeded to take judicial action, in state court, to garnish those funds pursuant to nonbankruptcy law.

Velocity, in turn, brought suit, seeking an injunction prohibiting 434 N. Orange from collecting Mr. Wanger's monies and asking the Bankruptcy Court to instead approve Mr. Wanger's gratuitous donation of the monies to Velocity's bankruptcy estate. In so doing, Velocity never argued an injunction was necessary to advance a reorganizational purpose aside from the accumulation of funds; it is not that Mr. Wanger's attention needed to be devoted to a chapter 11 case, or that collecting from Mr. Wanger would occasion some collateral, deleterious impact upon the Debtor's estate. Rather, Velocity simply urged that it had a need for the

monies Mr. Wanger had concealed in his trust and, as such, ought to be permitted to take those monies in lieu of the funds being garnished by 434 N. Orange.

The Bankruptcy Court entered the relief requested by the Debtor and this appeal timely followed.

The issues on appeal are (i) whether a section 105 injunction may be entered solely based upon a debtor's pecuniary need; (ii) whether or not a section 105 injunction may be used to facilitate a fraudulent conveyance; and (iii) whether an order granting an unopposed procedural motion may afford relief broader than what is sought therein.

All three inquiries are questions of law, going to (i) the allowable reach of section 105 injunctions; and (ii) the scope of orders granting unopposed motions. As such, each question is addressed de novo on appeal. See *Mellem v. Mellem*, 625 B.R. 172, 177 (B.A.P. 9th Cir. 2021) ("As questions of law predominate in this instance, review is de novo."). To the extent the inquiries concerning entry of injunctive relief are actually mixed questions of law and fact, the applicable appellate standard of review is still de novo. *See Groner v. Miller (In re Miller)*, 262 B.R. 499, 503 (B.A.P. 9th Cir. 2001) ("Mixed questions of law and fact are generally reviewed *de novo.*") (citing *Diamond v. City of Taft*, 215 F.3d 1052, 1055 (9th Cir. 2000)).

"De novo means review is independent, with no deference given to the trial court's conclusion." *Wharton v. Schwartzer (In re Wharton)*, 563 B.R. 289, 295

(B.A.P. 9th Cir. 2017) (citing *Charlie Y., Inc. v. Carey (In re Carey)*, 446 B.R. 384, 389 (9th Cir. BAP 2011) (citing *McComish v. Bennett*, 611 F.3d 510, 519 (9th Cir. 2010))).

**III. Statement of the Case**

While there is ample complexity to the chapter 11 efforts of Velocity and a series of related entities, the issues raised on this appeal are purely legal (or almost purely legal) in nature and relatively discreet. The pertinent factual background is accordingly fairly circumscribed:

Velocity and its co-debtors sought chapter 11 bankruptcy relief on May 7, 2025. Appendix at 30. Pre-petition, Velocity entered into a lease with 434 N. Orange, with the obligations thereunder being partially guaranteed by Messrs. Kaplan and Wanger as well as by Velocity Esports, Inc., a related entity. Appendix at 25, 29.

Following a demise of the landlord/tenant relationship, 434 N. Orange pursued remedies against Messrs. Kaplan and Wanger, Appendix at 29, and obtained a default judgment in the sum of $400,000.00 from a Florida state court, Appendix at 25. Mr. Wanger then refused to disclose information about his assets and was held in contempt of court for failing to abide by disclosure requirements. Appendix at 75. Notwithstanding Mr. Wanger's obstruction, 434 N. Orange managed to locate a self-settled trust for the benefit of Mr. Wanger, Appendix at 75, and urged the corpus thereof to be reachable under Florida and Illinois law, Appendix at 25. The trust held

$386,454.20 in a Merrill Lynch account, Appendix at 26, and an additional $3,988.22 in a Bank of America account, Appendix at 26. 434 N. Orange sought to garnish these monies. Appendix at 26, 75.

Approximately 10 days before a hearing on the garnishment of the trust's monies, Velocity brought the at-issue adversary proceeding. Appendix at 26. This was surprising, insofar as Velocity—more than a year prior—had indicated an intent to pursue such relief through a first day motion in the main bankruptcy case. Appendix at 72. Yet Velocity never followed through with this effort until 434 N. Orange located Mr. Wanger's concealed funds. Appendix at 26, 75.

Once Velocity did pursue injunctive relief, the Debtor did not initially expressly seek to take the monies held in Mr. Wanger's trust but, rather, only ". . . to prevent Orange from taking the money while preserving the ability to seek Bankruptcy Court-supervised use of those funds for plan implementation, including Allowed Administrative Claims, Allowed Professional Fee Claims. . ." Appendix at 26-27. In so doing, the Debtor promised that "[a]ny such use would occur **only after notice**, hearing, and further order of this Court," Appendix at 27 (emphasis added).

The Debtor sought a temporary restraining order and preliminary injunction, pursuant to section 105 of the Bankruptcy Code. Appendix at 50. 434 N. Orange timely opposed the request for injunctive relief. Appendix at 70.

In seeking injunctive relief, the Debtor pointed—seemingly solely—to a pecuniary need for the monies concealed in Mr. Wanger's trust. Appendix at 55-56. Specifically, the Debtor noted that without these funds, there would not be monies to pay administrative expense claims (consisting, overwhelmingly, of the fees of the Debtor's counsel) on the effective date of a thus-far-unconfirmed plan of reorganization. Appendix at 165-167. The Debtor did not suggest garnishment proceedings would distract Mr. Wanger from the business of reorganizing, that there was a true likelihood of successful reorganization in the first instance, or that the Debtor's estate (or the estate of any related debtor-in-possession) would suffer some non-pecuniary detriment if 434 N. Orange garnished Mr. Wanger's trust funds. Appendix *passim*. The Debtor, rather, rested solely upon a need to obtain the monies that had been located by 434 N. Orange, Appendix at 55-56, later clarifying this need was rooted in the Debtor's administrative insolvency, Appendix at 165, which, in turn, was becoming "a confirmation problem," Appendix at 165.

The Bankruptcy Court thereafter issued a temporary restraining order preserving the status quo, Appendix at 190, which was continued—by consent—multiple times, Appendix at 190.

Subsequently, the Debtor filed a motion seeking leave to conditionally transfer the monies being held by Mr. Wanger's trust. Appendix at 101. Specifically, Velocity sought to authorize a "contribution" of the monies, by Mr. Wanger, to the

Debtor's estate. Appendix at 111. The applicable motion expressly hedged this request by asking, *inter alia*, "Plaintiffs respectfully request that, **upon or contemporaneously with entry of the preliminary injunction**, the Court approve the contribution, authorize the specified direct payments subject to the stated safeguards, and grant the related and alternative relief requested herein." Appendix at 111-112 (emphasis added).

434 N. Orange did not oppose this motion, instead focusing on opposing entry of a preliminary injunction and relying on the fact that the request to move funds was contingent upon a preliminary injunction first being entered. Appendix at 153-154. The motion to conditionally authorize a transfer of the trust's monies was accordingly unopposed. Appendix at 154. However, in granting that motion, the Bankruptcy Court authorized an *immediate* transfer of the monies, directing 434 N. Orange to release its garnishment lien "within five business days." Appendix at 114. This order was entered even though there still had not been a ruling on the motion for entry of a preliminary injunction. Appendix at 1-22.

Noting the order's provisions to exceed the scope of the underlying motion, 434 N. Orange promptly sought relief from the order directing a release of its garnishment lien. Appendix at 119. Velocity opposed this request. Appendix at 125.

A hearing on the motion to reconsider the order directing a release of the garnishment lien, alongside the correlative request for a preliminary injunction, was

then held on September 29, 2026. Appendix at 148. At the hearing, it was revealed Mr. Wanger was contemplating filing a personal chapter 7 case. Appendix at 178.

The Bankruptcy Court denied the request for relief from the order directing a release of the garnishment lien, Appendix at 202, and entered a preliminary injunction, Appendix at 206.

This appeal timely followed. Appendix at 199.

Meanwhile, a hearing on confirmation of the Debtor's plan of reorganization is presently set for December 15, 2026. Appendix at 162.

## IV. Summary of Argument

Historically, injunctions issued pursuant to section 105 of the Bankruptcy Code have been extraordinary in their rarity and always underpinned by equitable considerations correlative to the reorganization process. There does not appear to be any reported precedent—at least that counsel for the Appellant has been able to locate—for entry of such an injunction where a debtor's argument is solely one of economic need. To the contrary, the developed factors surrounding section 105 injunctions make this relief almost *per se* unavailable to an economically unhealthy debtor because of the need to demonstrate a likelihood of success in reorganizing. Yet, in this case, a section 105 injunction was solely premised upon the Debtor's purported economic need to pay administrative expense claims and a paucity of other monies with which to so much as feign administrative solvency.

434 N. Orange maintains, through this appeal, that the injunction entered below is an impermissible exercise of bankruptcy exceptionalism, with a court finding a debtor-in-possession needs monies more than a creditor and, accordingly, seeing fit to pluck such monies from the creditor's bargained-for grasp. What 434 N. Orange sought was to properly enforce a lawfully-obtained judgment on a previously-negotiated personal guaranty, through traditional garnishment proceedings. Disrupting these efforts is not a proper use of a section 105 injunction and, if affirmed, would create a precedent whereby the entry of section 105 injunctions would be thoroughly mundane.

In this brief, 434 N. Orange also urges the at-issue injunction is a particularly improper use of section 105 because the transfer effectuated thereby is a fraudulent conveyance in contravention of the Statute of Elizabeth. In lieu of using Mr. Wanger's money to satisfy part of the claim of a creditor with a garnishment lien, the Bankruptcy Court effectuated a scenario whereby Mr. Wanger's money would be gratuitously donated to Velocity's estate, for the payment of administrative expense claims. There was no contention that Mr. Wanger owed any funds to Velocity (or any of the other debtors); there was simply a contention that the debtors would very much like to have access to the funds Mr. Wanger secreted in a self-settled trust.

Finally, and most simply, 434 N. Orange urges the Bankruptcy Court erred in granting relief broader than that sought in the unopposed motion seeking permission to conditionally transfer funds. Because 434 N. Orange was vehemently opposing preliminary injunctive relief, 434 N. Orange felt secure in not opposing a motion seeking relief that would only spring if a preliminary injunction was first entered. Yet the Bankruptcy Court afforded relief broader than that sought in the motion, directing an immediate—pre-injunction—release of the garnishment lien held by 434 N. Orange. This was in error, essentially constituting an *ex parte* mini-injunction unto itself, and the Bankruptcy Court should have reconsidered this order when promptly asked to do so.

## V. Argument

### A. A Debtor's Pecuniary Need is Insufficient, Without More, to Warrant Entry of a Section 105 Injunction

The Bankruptcy Court erred by taking two extraordinary remedies—the granting of injunctive relief and the affording of relief under section 105 of the Bankruptcy Code—and applying them in an utterly ordinary circumstance. The only support for the injunction in this case is a generalized notion that the Debtor needs money and, without access to the at-issue funds, will not be able to pay the administrative expense claims of professionals. Yet such monetary needs are all-too-common afflictions amongst debtors in bankruptcy, with few being the chapter 11 cases where there does not exist some articulable need for the infusion of additional

monies. This ought not have been the basis for entry of a section 105 injunction since these extraordinary remedies (i) are reserved for circumstances where there exists more than a pecuniary need on the part of a debtor; (ii) require a showing of a likelihood of success in reorganizing; and (iii) require a showing of irreparable harm in the absence of injunctive relief. None of these three conditions are present in the instant case.

The Supreme Court has made clear that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).

Case law similarly teaches that use of section 105, for purposes of entering injunctive relief, is "a dramatic measure to be used cautiously." *In re Nat'l Staffing Servs., LLC*, 338 B.R. 35, 37 (Bankr. N.D. Ohio 2005) (citing *Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.),* 280 F.3d 648, 658 (6th Cir. 2002)). *See also In re Third Eighty-Ninth Assoc.*, 138 B.R. 144, 146 (S.D.N.Y. 1992) (discussing how section 105 injunctions are to be invoked "sparingly" and only in "limited circumstances); *Bank of N.Y. Mellon v. Chul Hyun Gong (In re Chul Hyun Gong)*, 2017 Bankr. LEXIS 2228, at *13 (Bankr. C.D. Cal. Aug. 9, 2017) (noting section 105 allows courts "to grant extraordinary relief"); *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 213 (2d Cir. 2014) (". . . it is 'an extraordinary exercise of discretion to use [section 105] to stay a third party action not involving

the debtor. . .'") (quoting *In re G.S.F. Corp*., 938 F.2d 1467, 1474 (1st Cir. 1991)); *In re Asset Resolution Corp*., 552 B.R. 856, 863 (Bankr. D. Kan. 2016) ("Section 105(a) third-party injunctions are issued only in the rare circumstance that there is an extraordinary benefit to the estate and unsecured claimants.").

Precedent also instructs that when section 105 is utilized for extraordinary purposes, a court must do so only in furtherance of authority ". . . expressly conferred elsewhere in the code." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 216 n.2 (2024) (citing *Purdue Pharma, L.P. v. City of Grande Prairie (In re Pharma L.P.)*, 69 F.4th 45, 73 (2d Cir. 2023) (quoting 11 U.S.C. §105(a)); 2 R. Levin & H. Sommer, Collier on Bankruptcy ¶105.01[1], p. 105-6 (16th ed. 2023)). *See also In re Powell*, 2025 Bankr. LEXIS 1755, at *10 (Bankr. S.D.N.Y. July 23, 2025) ("Courts should hesitate to rely on or should refrain from relying on Section 105(a) alone as authority to take action not supported by other specific Code provisions, especially where the substance of the relief sought is provided for by another section under which the movant is not eligible for relief.").

It is against this backdrop that section 105 injunctions—even in a pre-*Purdue* environment—are both rare and extraordinary in nature. Case law reveals that when third party injunctions have been entered, in furtherance of a debtor's reorganizational aspirations, such have seemingly always been on (i) a showing of likelihood of success in reorganizing; (ii) a showing of some non-pecuniary need for

injunctive relief; and (iii) a showing of irreparable, non-economic harm in the absence of a party being enjoined.

The need to show a likelihood of success in reorganizing is settled in this circuit. *See Solidus Networks*, 502 F.3d at 1095 ("We hold that a debtor seeking to stay an action against a non-debtor must show a reasonable likelihood of a successful reorganization."); *In re Mariner Health Cent., Inc.*, 2023 Bankr. LEXIS 95, at *26 (Bankr. N.D. Cal. Jan. 12, 2023) (accord).[2]

Yet precedent does, too, show that such injunctive relief ought only be made available when needed to advance some ends aside from the betterment of a debtor's financial condition. This notion is inextricably linked to the requirement that a party seeking injunctive relief also make a showing of irreparable, non-monetary harm being otherwise afoot. *See, e.g.*, *Homestead Holdings, Inc. v. Broome & Wellington (In re PTI Holding Corp.)*, 346 B.R. 820, 827-28 (Bankr. D. Nev. 2006) (". . . the Greensteins are integral parts of the debtor's reorganization efforts. Any material diversion of their time or energies would result in a loss to the estate. In such cases, courts have easily found that the loss of such key participants at a crucial period in

[2] 434 N. Orange has urged this rigor should be revisited by the Ninth Circuit and that debtors seeking section 105 injunctions ought to be compelled to show a likelihood of success on a viable freestanding cause of action. Appendix at 74. 434 N. Orange recognizes this Honorable Court cannot disturb settled Ninth Circuit precedent, however, *see Ocwen Loan Servicing LLC v. Marino (In re Marino)*, 949 F.3d 483, 489 (9th Cir. 2020), and accordingly merely makes this notation so as to preserve the issue in the event of a further appeal.

the operational life and reorganization of the debtor may constitute irreparable harm to the estate and to the reorganization effort.") (citing *In re M.J.H. Leasing, Inc.*, 328 B.R. 363, 368-69 (Bankr. D. Mass. 2005); *Lomas Fin. Corp. v. Northern Trust Co. (In re Lomas Fin. Corp.)*, 117 B.R. 64, 66-67 (S.D.N.Y. 1990); *Lazarus Burman Assoc. v. Nat'l Westminster Bank USA (In re Lazarus Burman Assoc.)*, 161 B.R. 891, 899-900 (Bankr. E.D.N.Y. 1993); *In re TRS, Inc.*, 76 B.R. 805, 809 (Bankr. D. Kan. 1987); *In re Kasual Kreation, Inc.,* 54 B.R. 915, 917 (Bankr. S.D. Fla. 1985); *In re Northlake Bldg. Partners*, 41 B.R. 231, 233-34 (Bankr. N.D. Ill. 1984)); *L.A. Mem'l Coliseum Com. v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("It is well established, however, that such monetary injury is not normally considered irreparable.").

The Ninth Circuit has previously addressed a situation where enforcement of a state court judgment "could affect the bankruptcy proceeding," *In re Am. Hardwoods*, 885 F.2d 621, 624 (9th Cir. 1989), because execution on a principal's stock would leave the individual with "little incentive to operate" the entity "and maintain the reorganization plan." *Id.* Yet, even in that factual prism, the Ninth Circuit held denial of injunctive relief to be appropriate absent a showing that, *inter alia*, plan success "hinged" on the injunction. *Id.* at 627.

Similarly, in *Solidus Networks*, the Ninth Circuit recognized the availability of preliminary injunctive relief but overturned the subject injunction because a

showing that the debtor's principal "was actively marketing [the debtor's] products in his consulting position" was insufficient to demonstrate an actual likelihood of reorganization. *Solidus Networks*, 502 F.3d at 1097. The Ninth Circuit even went so far as to find that a risk of the debtor's principal disclosing privileged information, belonging to the debtor, is not enough to support a finding of irreparable harm capable of tipping the balance of equities. *Id.*

Indeed, as far back as 1983, the Ninth Circuit flatly proclaimed—in a holding that has been undisturbed for the ensuing four decades—that "[w]e refuse to adopt the position, urged upon us by the appellees, that an injunction should issue simply because the state court action might affect the allocation of assets among claimants in the bankruptcy." *In re Fed. Shopping Way, Inc.*, 717 F.2d 1264, 1274 (9th Cir. 1983).

In this case, though, the record is wholly devoid of any compelling facts that support entry of injunctive relief: there is only a showing that the Debtor—like so many chapter 11 debtors-in-possession—could use some extra money. There is no evidence Mr. Wanger's efforts will be divided if his trust is garnished; to the contrary, there is not even any evidence that Mr. Wanger is still working for—or with—the Debtor. Nor is there any suggestion that Mr. Wanger would compromise trade secrets of the Debtor if made to suffer garnishment proceedings, as in *Solidus Networks*. There is, rather, only the sense that (i) the Debtor is administratively

insolvent; and (ii) 434 N. Orange has obtained some advantage over other creditors (including administrative creditors) by having bargained for a pre-petition guaranty and having then located monies being otherwise concealed by that pre-petition guarantor.

As noted *supra*, injunctions and invocation of section 105 relief are both extraordinary. Yet insolvent debtors in bankruptcy are altogether *ordinary*. So creating a paradigm whereby a debtor need only show that it has some generalized need for money, and utilizing that paradigm to strip correlative funds from the grasp of a creditor, would facially undermine these well-settled concepts.

Equally, Velocity has not shown a likelihood of success in reorganizing. Instead, and much to the contrary, the Debtor has demonstrated extant administrative insolvency. Yet, in affording injunctive relief, the Bankruptcy Court appears to have looked past the need to demonstrate a likelihood of success in reorganizing and, instead, imposed a vague standard whereby injunctive relief is appropriate if it might help foment a better chance at reorganizing. In so doing, the Bankruptcy Court appears to have relied on the "sliding scale" standard. Appendix at 193. This, however, is problematic insofar as the Ninth Circuit's use of a "sliding scale" standard has been seemingly rejected by the Supreme Court. *See Winter*, 555 U.S. at 20-22; *Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1235 (D.C. Cir. 2025) ("It is questionable that the sliding scale approach remains good law after 2008,

when the Supreme Court decided *Winter v. Natural Resources Defense Council, Inc*. That opinion can be read to require movants to establish *each* preliminary injunction factor independently.") (citing *Winter*, 555 U.S. at 20-22) (emphasis in original).

Moreover, even if a "sliding scale" standard is still utilizable, post-*Winter*, the injunction in this case remains enigmatic: there is no showing of a likelihood of success in reorganizing and, insofar as the only potential ills complained of are purely monetary in nature, there is also no showing of irreparable harm befalling the Debtor (or any of its co-debtors). The harm "cured" by the injunction in this matter is that someone other than administrative creditors might benefit from the use of Mr. Wanger's secreted monies. Especially insofar as Mr. Wanger is not monetarily obligated to the Debtor, though, this is not a legally cognizable harm meriting extraordinary injunctive relief.

While somewhat suspect post-*Purdue*, there may well be a place for section 105 injunctions in chapter 11 (and possibly in other chapters as well). 434 N. Orange does not urge that equitable tool ought to be stripped from the grasp of bankruptcy courts. 434 N. Orange simply posits that such an extraordinary tool ought to be reserved for situations that are (i) not as thoroughly ordinary as that *sub judice*; (ii) where there is a demonstrable likelihood of success in reorganizing; and (iii) where some non-pecuniary harm will irreparably befall a debtor if an injunction is not entered. These are mandates well settled by case law yet also mandates that were

seemingly overlooked by the Bankruptcy Court. 434 N. Orange respectfully urges this Honorable Court to remedy that error.

### B. It is Improper to Use a Section 105 Injunction to Effectuate a Fraudulent Conveyance

There are myriad perils to allowing a section 105 injunction to equitably reallocate monies, on the tenuous theory that a debtor's estate is better suited to spend funds than is a creditor. Not only does such touch upon a vaguely Marxist construct ("[f]rom each according to his ability, to each according to his needs") but, in so doing, the notion advances a sort of bankruptcy exceptionalism: monies are better trusted to the supervision of a bankruptcy court than to the whims of a creditor. The infirmity of this notion is well exhibited by one of the crueler ironies of this case: the Bankruptcy Court blessed a fraudulent conveyance.

To be sure, it appears that absolutely no one—much less an esteemed bankruptcy judge—intentionally set out to orchestrate a fraudulent conveyance. But, by the time the final hearing arrived and counsel for the Debtor shared the then-likely chapter 7 fate of Mr. Wanger,[3] the constructively fraudulent nature of the proposed conveyance was evident: an insolvent individual was transferring money, in exchange for no consideration whatsoever, to the detriment of one of his judgment creditors.

---

[3] This fate ultimately came to pass. *See In re Wanger*, Case No. 26-18405 (Bankr. N.D. Ill. 2026).

This scenario is the epitome of a fraudulent conveyance. *See* Nev. Rev. Stat. § 112.190(1) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."); Fla. Stat. § 726.106 (same); 740 Ill. Comp. Stat. § 160/6 (same).

So, too, would the transaction be considered fraudulent if undertaken by someone who then petitioned for bankruptcy relief (something that happens to have occurred after the ruling in this case, *see, supra,* n. 3). *See* 11 U.S.C. § 548(a)(1)(B).

To be sure, a fraudulent conveyance is not a crime and, in point of fact, is not even a true form of fraud (at least not, as here, when considered in the "constructive" ilk). *See United Bank v. Buckingham*, 301 F. Supp. 3d 547 (D. Md. 2018). So the issue is not that the Bankruptcy Court entered an illegal order—that is plainly not what happened. The issue, rather, is that there is a certain core perversion in using section 105 to advance ends the same court regularly tells debtors to invite redress under sections 544 and 548. A fraudulent conveyance may not be a crime or even an actual fraud, but it also is a far cry from being equitable. Yet, in using section 105 to

direct such a conveyance in this case, the Bankruptcy Court relied upon a statutory foundation dependent upon the furtherance of equity.

434 N. Orange does not instantly urge this Honorable Court to make some novel finding that a section 105 injunction is forbade where the injunction will effectuate a fraudulent conveyance (though it is difficult to conceive of a situation where this would ever be an appropriate use of a section 105 injunction). The argument, rather, is more demonstrative in nature: the preceding section of this brief implores that section 105 injunctions ought to be reserved for situations with facts more extraordinary than financial need or administrative insolvency; the fraudulent conveyance argument is simply illustrative of the warts that may so easily glom onto an injunction issued under less compelling circumstances.

### C. The Bankruptcy Court Erred in Awarding Relief Broader than that Sought in an Unopposed Motion

Finally, there is a purely-procedural issue included in this appeal so as to ensure relief can be meaningfully afforded upon a remand. In addition to seeking an injunction prohibiting 434 N. Orange from taking Mr. Wanger's concealed monies, the Debtor also sought permission—upon entry of a preliminary injunction—to have Mr. Wanger gratuitously donate the monies to the Debtor's estate, for application to the payment of administrative expense claims. This motion went unopposed, with 434 N. Orange being comfortable with the conditional sequencing proposed therein. Yet the Bankruptcy Court, in granting the motion, ordered an immediate release of

434 N. Orange's garnishment lien—before a preliminary injunction was ever entered. 434 N. Orange promptly sought relief from this order (essentially moving for reconsideration); the denial of such relief is part of this appeal.

As a starting point: this issue is moot if 434 N. Orange does not prevail on its efforts to have the preliminary injunction overturned. From the outset, 434 N. Orange has been plain that it does not desire to be obstructionist and will not stand in the way of the Debtor (or, as it is, the Debtor's professionals) collecting Mr. Wanger's concealed monies, should 434 N. Orange not succeed on the merits. That is still true: if this appeal is unsuccessful, issues related to the order directing a transfer of monies become moot. And while bankruptcy courts are arguably permitted to hear moot matters, *see Kiviti v. Bhatt*, 80 F.4th 520, 532 (4th Cir. 2023) ("Mootness is an Article III doctrine, and bankruptcy courts are not Article III courts."), there is no suggested utility in conducting such an examination *sub judice*.

Should 434 N. Orange succeed in attacking the preliminary injunction, however, this procedural point becomes critical: the Bankruptcy Court directed 434 N. Orange to release its garnishment lien on Mr. Wanger's concealed funds *before* the Bankruptcy Court entered an actual preliminary injunction prohibiting 434 N. Orange from following through on its garnishment efforts. This is plainly impermissible, being the *de facto* entry of a separate injunction, entered *ex parte* and without any accompanying exigency. *See Nken v. Holder*, 556 U.S. 418, 428 (2009)

("An injunction . . . is a means by which a court tells someone what to do or not to do. When a court employs 'the extraordinary remedy of injunction,' it directs the conduct of a party, and does so with the backing of its full coercive powers.") (quoting *Weinberger* v. *Romero-Barcelo*, 456 U.S. 305, 312 (1982); citing Black's Law Dictionary 784 (6th ed. 1990)).

The order in question directs 434 N. Orange to "file a Notice of Dissolution . . . of the Writ of Garnishment . . . within five business days from the entry of this Order. . ." Appendix at 114. That is an order that "tells someone what to do or not to do." *Nken*, 556 U.S. at 428. Yet the order was issued without any notice to 434 N. Orange and without a showing of (i) irreparable harm accruing before 434 N. Orange could be notified, Fed. R. Civ. P. 65(b)(1)(A) (made applicable by Fed. R. Bankr. P. 7065), or (ii) a showing of any effort to give notice to 434 N. Orange, Fed. R. Civ. P. 65(b)(1)(B).

Yet even if not considered as an injunction, the order still offends the premise that a court ought not award relief broader that what is sought in an underlying motion. *See, e.g., Contour Design, Inc. v. Chance Mold Steel Co.*, 2010 U.S. Dist. LEXIS 121761, at *9 (D.N.H. Oct. 22, 2010) (refusing to grant relief broader than that sought in a motion, even when a docketed proposed order shows a desire to obtain broader relief, because "[t]he proper route for plaintiff to expand its request for relief would have been the filing of a motion to amend the motion for preliminary

injunction," while also noting "a catch-all 'including but not limited to' phrase . . . is not sufficient notice to the defendant or the court); *Rockette v. Carpenter Mgmt.*, 2025 U.S. Dist. LEXIS 224420, at *4 (N.D. Miss. Nov. 14, 2025) ("Rockette may not request by motion injunctive relief greater than the relief requested in his amended complaint.") (citing *Temple v. Reliance First Capital, LLC*, 2025 U.S. Dist. LEXIS 106014 (N.D. Ala. June 4, 2025) (citing *Noble Prestige Ltd. v. Galle*, 83 F.4th 1366, 1382-83 (11th Cir. 2023)); *Giaimo v. MacKinnon*, 2000 WL 1745171, at *4 and n.7 (D.N.H. Oct. 20, 2000)); *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) (". . . we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

Not coincidentally, this case epitomizes the wisdom of circumscribing relief to the scope of a motion—especially when the motion is unopposed. 434 N. Orange made a cognizant decision to not oppose the funding motion, knowing relief would only spring if a preliminary injunction was entered, and focusing efforts on opposing that preliminary injunction. In essence, 434 N. Orange was comforted by the express condition precedent—a release of the garnishment lien would be ordered if, and only if, a preliminary injunction was entered—and accordingly made a litigation decision to not act. Yet, in ignoring that condition precedent and granting relief broader than what was sought, the Bankruptcy Court created a prism whereby 434 N. Orange—

in connection with every other procedural motion in this case, no matter how seemingly mundane—must be on constant guard.

It does not benefit anyone for a party to be compelled to conditionally oppose every motion, in the off-chance a court considers granting relief beyond what is sought therein. In fact, an opposition brief premised upon a strenuous objection to relief not actually sought may well be grounds to inquire as to an attorney's good faith or billing habits. Yet, by awarding relief broader than what was sought in the underlying motion—and, in so doing, undermining the previous promise of "notice" before a disbursement of monies would be ordered, Appendix at 27—the Bankruptcy Court essentially upended the norms of civil litigation.

Motions seeking relief from final orders (colloquially, motions to reconsider) are, no doubt, much-abused tools too often subjected to the mischief of unrepresented litigants and the weaponization of ethically-agnostic members of the bar. 434 N. Orange did not file this motion in the Bankruptcy Court lightly or in a simple effort to obtain a second bite at the apple. 434 N. Orange, rather, filed the motion because it genuinely appeared the Bankruptcy Court—through presentation of a proposed order—may have granted relief broader than what was intended. And 434 N. Orange has accordingly appealed the denial of its motion for relief for the sole and limited purpose of ensuring there is a mechanism to undo the transfer,

should 434 N. Orange succeed on the portion of this appeal attacking entry of the preliminary injunction.

## VI. Certificate of Compliance

Pursuant to Federal Rule of Bankruptcy Procedure 8014(a)(10), I hereby certify this brief complies with the page limitation of Federal Rule of Bankruptcy Procedure 8015(b) because it does not exceed 30 pages in length.

Respectfully submitted,

Dated: November 19, 2026 By: /s/ Maurice B. VerStandig

Maurice B. VerStandig, Esq.
Nevada Bar No. 15346
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy., #665
Henderson, Nevada 89012
Phone: (301) 444-4600
Facsimile: (301) 444-4600
mac@mbvesq.com
*Counsel for the Appellant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of November, 2026, a copy of the foregoing was served electronically upon filing via the ECF system, with copies to all counsel in this matter.

/s/ Maurice B. VerStandig
Maurice B. VerStandig